1  ANDRÉ BIROTTE JR.
   United States Attorney
2  DENNISE D. WILLETT
   Assistant United States Attorney
3  Chief, Santa Ana Branch
   CHARLES E. PELL (Cal. Bar No. 210309)
4  Assistant United States Attorney
   Santa Ana Branch Office
5       411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
6       Telephone: (714) 338-3542
        Facsimile: (714) 338-3561
7       E-mail:  Charles.E.Pell2@usdoj.gov
   JOSEPH A. RILLOTTA
8  Trial Attorney
   U.S. Dept. of Justice, Tax Division
9       601 D Street, NW, Room 7904
        Washington, D.C. 20004
10      Telephone: (202) 305-2374
        Facsimile: (202) 514-9623
11      Email: Joseph.A.Rillotta@usdoj.gov

12 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

13                 UNITED STATES DISTRICT COURT

14           FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 UNITED STATES OF AMERICA,     ) Case No. CR 10-00678-SJO
                                 )
17            Plaintiff,         ) PLEA AGREEMENT FOR DEFENDANT
                                 ) MASOOD CHOTANI
18        v.                     )
                                 )
19 MASOOD CHOTANI,               )
                                 )
20        Defendant.             )
                                 )
21 _____   )

22      1.  This constitutes the binding plea agreement between

23 MASOOD CHOTANI ("defendant" or "Chotani") and the United States

24 Attorney's Office for the Central District of California and the

25 United States Department of Justice, Tax Division (collectively,

26 "the USAO") in the above-captioned case pursuant to Federal Rule

27 of Criminal Procedure 11(c)(1)(C).  This agreement is limited to

28 the USAO and cannot bind any other federal, state, local, or

1  foreign prosecuting, enforcement, administrative, or regulatory

2  authorities.

3                    RULE 11(c)(1)(C) AGREEMENT

4      2.  Defendant understands that this agreement is entered

5  into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

6  Accordingly, defendant understands that, if the Court determines

7  that it will not accept this agreement, absent a breach of this

8  agreement by defendant prior to that determination and whether or

9  not defendant elects to withdraw any guilty plea entered pursuant

10  to this agreement, this agreement will, with the exception of

11  paragraph 25 below, be rendered null and void and both defendant

12  and the USAO will be relieved of their obligations under this

13  agreement.  Defendant agrees, however, that if defendant breaches

14  this agreement prior to the Court's determination whether or not

15  to accept this agreement, the breach provisions of this

16  agreement, paragraphs 27 and 28 below, will control, with the

17  result that defendant will not be able to withdraw any guilty

18  plea entered pursuant to this agreement, the USAO will be

19  relieved of all of its obligations under this agreement, and the

20  Court's failure to follow any recommendation or request regarding

21  sentence set forth in this agreement will not provide a basis for

22  defendant to withdraw defendant's guilty plea.

23                    DEFENDANT'S OBLIGATIONS

24      3.  Defendant agrees to:

25          a) At the earliest opportunity requested by the USAO

26  and provided by the Court, appear and plead guilty to count one

27  of the indictment in United States v. Masood Chotani,

28

                                  2

1  Case No. CR 10-00678-SJO, which charges defendant with Conspiracy

2  to Defraud the United States, in violation of 18 U.S.C. § 371.

3          b) Not contest facts agreed to in this agreement.

4          c) Abide by all agreements regarding sentencing

5  contained in this agreement.

6          d) Appear for all court appearances, surrender as

7  ordered for service of sentence, obey all conditions of any bond,

8  and obey any other ongoing court order in this matter.

9          e) Not commit any crime; however, offenses that would

10 be excluded for sentencing purposes under United States

11 Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines" or

12 "Guidelines) § 4A1.2(c) are not within the scope of this

13 agreement.

14         f) Not commit any act that would constitute obstruction

15 of justice within the meaning of U.S.S.G. § 3C1.1.

16         g) Be truthful at all times with Pretrial Services, the

17 United States Probation Office, and the Court.

18         h) Pay the applicable special assessment at or before

19 the time of sentencing unless defendant lacks the ability to pay

20 and prior to sentencing submits a completed financial statement

21 on a form to be provided by the USAO.

22         i) Agree to and not oppose the imposition of the

23 condition of probation or supervised release that defendant not

24 prepare (or participate in any activity where anyone prepares)

25 federal or state income tax returns or other financial or

26 accounting documents for anyone other than himself and his legal

27 spouse and children.

28

<u>PAYMENT OF TAXES OWED</u>

4.    Defendant agrees to cooperate with the Internal Revenue Service in the determination of defendant's tax liability for tax years 2009 through 2011.  Defendant agrees that:

a) Defendant will file, prior to the time of sentencing, amended returns for the above years correctly reporting all income (including income earned overseas); will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will, at or before sentencing, pay (or enter into an installment agreement with the Internal Revenue Service to pay) all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay (or enter into an installment agreement with the Internal Revenue Service to pay) all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s).

b) Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c) Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d) Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the

4

1  criminal investigation of this matter, including materials and
2  information obtained through grand jury subpoenas.

THE USAO'S OBLIGATIONS

4      5.  The USAO agrees to:

5          a) Not contest facts agreed to in this agreement.

6          b) Abide by all agreements regarding sentencing
7  contained in this agreement.

8          c) At the time of sentencing, move to dismiss the
9  remaining counts of the indictment as against defendant.
10 Defendant agrees, however, that at the time of sentencing the
11 Court may consider any dismissed charges in determining the
12 applicable Sentencing Guidelines range, the propriety and extent
13 of any departure from that range, and the sentence to be imposed.

14         d) At the time of sentencing, provided that defendant
15 demonstrates an acceptance of responsibility for the offense up
16 to and including the time of sentencing, recommend a two-level
17 reduction in the applicable Sentencing Guidelines offense level,
18 pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,
19 move for an additional one-level reduction if available under
20 that section.

NATURE OF THE OFFENSE

22     6.  Defendant understands that for defendant to be guilty of
23 the crime charged in count one of the indictment, that is,
24 Conspiracy to Defraud the United States, Title 18, United States
25 Code, Section 371, the following must be true: (1) there existed
26 a conspiracy, that is, an agreement by two or more persons to
27 commit an offense against the United States or to defraud the
28 United States; (2) the defendant knowingly and voluntarily

1  participated in the conspiracy; and (3) the defendant committed

2  an overt act in furtherance of the conspiracy.

3                    PENALTIES AND RESTITUTION

4       7.   Defendant understands that the statutory maximum

5  sentence that the Court can impose for a violation of Title 18,

6  United States Code, Section 371, is: 5 years' imprisonment; a

7  three-year period of supervised release; a fine of $250,000 or

8  twice the gross gain or gross loss resulting from the offense,

9  whichever is greatest; and a mandatory special assessment of

10  $100.

11      8.   Defendant understands that supervised release is a

12  period of time following imprisonment during which defendant will

13  be subject to various restrictions and requirements.  Defendant

14  understands that if defendant violates one or more of the

15  conditions of any supervised release imposed, defendant may be

16  returned to prison for all or part of the term of supervised

17  release authorized by statute for the offense that resulted in

18  the term of supervised release, which could result in defendant

19  serving a total term of imprisonment greater than the statutory

20  maximum stated above.

21      9.   Defendant understands that, by pleading guilty,

22  defendant may be giving up valuable government benefits and

23  valuable civic rights, such as the right to vote, the right to

24  possess a firearm, the right to hold office, and the right to

25  serve on a jury.  Defendant understands that once the Court

26  accepts defendant's guilty plea, it will be a federal felony for

27  defendant to possess a firearm or ammunition.  Defendant

28  understands that the conviction in this case may also subject

6

1  defendant to various other collateral consequences, including but
2  not limited to revocation of probation, parole, or supervised
3  release in another case and suspension or revocation of a
4  professional license.  Defendant understands that unanticipated
5  collateral consequences will not serve as grounds to withdraw
6  defendant's guilty plea.

7      10.  Defendant understands that, if defendant is not a
8  United States citizen, the felony conviction in this case may
9  subject defendant to: removal, also known as deportation, which
10 may, under some circumstances, be mandatory; denial of
11 citizenship; and denial of admission to the United States in the
12 future.  The Court cannot, and defendant's attorney also may not
13 be able to, advise defendant fully regarding the immigration
14 consequences of the felony conviction in this case.  Defendant
15 understands that unexpected immigration consequences will not
16 serve as grounds to withdraw defendant's guilty plea.

17     11.  Defendant agrees to make full restitution to the
18 Internal Revenue Service for the losses caused by defendant's
19 activities.

20        a)  Defendant agrees that the amount of restitution
21 shall include losses arising from the conspiracy set forth in
22 count one of the indictment, which losses defendant acknowledges
23 arose from his criminal conduct.  Moreover, in return for the
24 USAO's compliance with its obligations under this agreement,
25 Defendant agrees that the amount of restitution is not restricted
26 to the amounts alleged in the count to which defendant is
27 pleading guilty and may include losses arising from counts
28 dismissed pursuant to this agreement as well as all relevant

7

conduct (as defined in U.S.S.G. § 1B1.3) in connection with the aforementioned counts and charges.  Defendant understands that the precise amount and manner of restitution payments ordered herein is to be set by the Court.

b)    Defendant agrees that defendant will complete any IRS forms, including IRS Form 8821, "Tax Information Authorization," in connection with the payment of restitution in this matter, and will complete any other IRS paperwork necessary to effectuate the payment of defendant's restitution.

c)    Defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement, or any other time period.

d)    Defendant understands that defendant is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the IRS and identified by it as pertaining to defendant's particular liability.

e)    The USAO and the defendant agree that the tax loss determined for criminal purposes in the agreement is not binding for civil purposes and is exclusive of civil penalties and interest.

f)    Defendant further agrees to make restitution, as ordered by the Court.

1        g)   Defendant further agrees that defendant will not

2  seek the discharge of any restitution obligation, in whole or in

3  part, in any present or future bankruptcy proceeding.

4                  FACTUAL BASIS

5     12.  Defendant admits that defendant is, in fact, guilty of

6  the offense to which defendant is agreeing to plead guilty.

7  Defendant and the USAO agree to the statement of facts provided

8  below and agree that this statement of facts is sufficient to

9  support a plea of guilty to the charge described in this

10  agreement and to establish the Sentencing Guidelines factors set

11  forth in paragraph 14 below but is not meant to be a complete

12  recitation of all facts relevant to the underlying criminal

13  conduct or all facts known to either party that relate to that

14  conduct.

15     Defendant Chotani, age 53, was a resident of Porter

16  Ranch, California.  He received his Certified Public Accountant

17  (CPA) license in 1994.  Since the 1990s, defendant Chotani has

18  worked as a bookkeeper and tax return preparer.  In this line of

19  work, defendant is entrusted by his clients to keep in confidence

20  various personal identification and financial information.

21  Certain of defendant's tax preparation clients provided him with

22  their employer's Employment Identification Numbers (EINs), among

23  other information, so that defendant could prepare their federal

24  individual income tax returns.

25     In or about 2001, Haroon Amin ("Amin"), defendant's co-

26  conspirator and acquaintance, approached Chotani about a scheme

27  to fraudulently obtain tax refund checks from the United States

28  Treasury.  This scheme involved obtaining other persons' Social

1  Security Numbers (including Social Security Numbers for deceased
2  persons, which could be accessed through an Internet website) and
3  creating fictitious IRS Form W-2 Wage and Tax Statements in these
4  persons' names.  These fictitious Forms W-2 would falsely claim
5  that an employer paid wage income to an individual, and that
6  taxes were withheld from this income in excess of the amount
7  owed.  Amin and another co-conspirator, Ather Ali ("Ali"), would
8  then prepare and file false tax returns in each individual's
9  name, based upon a fictitious Form W-2, requesting a tax refund.
10 The scheme involved setting up addresses, (often by using fake
11 identifications to open a commercial mail receiving agency
12 ("CMRA") mailbox in one of the purported taxpayer's names),
13 listing these addresses on the fraudulent income tax returns as
14 the "taxpayer addresses" to which refund checks should be
15 delivered, and ultimately collecting refund checks from these
16 addresses.

17       However, in order to generate the fictitious Forms W-2 on
18 which the entire scheme depended, the co-conspirators needed
19 employer identification information for various companies
20 (including company names, addresses, and EINs).  Chotani agreed
21 to obtain such information from his tax preparation clients'
22 files, and to provide it to Amin so that the co-conspirators
23 could file false income tax returns claiming refunds.   In
24 exchange, Amin promised Chotani a portion of the fraudulently
25 obtained tax refunds.

26       Thus, in or about January 2002, defendant Chotani
27 voluntarily agreed to participate in the above-described scheme
28 and to conspire with Amin and other co-conspirators to

fraudulently claim income tax refunds in other persons' names.
Defendant Chotani thereafter committed various acts in
furtherance of this scheme.  For example, between about January
25, 2002 and September 19, 2003, Chotani misappropriated employer
identification information from his client files and provided it
to co-conspirators Amin and Ali so that they could file forty-
seven fraudulent returns in other persons' names.

In addition, defendant Chotani filed fraudulent tax returns
claiming refunds in his parents' names.  On or about January 14,
2002, defendant prepared and filed a Form 1040, U.S. Individual
Income Tax Return for tax year 2001 in the names of his father
(A.C.) and his mother (G.C.).  This return contained a fictitious
Form W-2 Wage and Tax Statement, using employer identification
information obtained from one of Chotani's client files.  The
return reported that G.C. earned wage income that in fact she had
not earned, from an employer for whom she had never worked.  On
this basis, Chotani fraudulently claimed a tax refund in G.C.'s
name, in the amount of $5,412.  On or about January 25, 2002, per
the instructions on the return, this refund was direct-deposited
by the IRS to a bank account held jointly in defendant Chotani's
and his parents' names.

On or about January 13, 2003, defendant Chotani prepared and
filed a Form 1040, U.S. Individual Income Tax Return for tax year
2002 in the names of his father (A.C.) and his mother (G.C.).
This return also contained a fictitious Form W-2 Wage and Tax
Statement, again using employer identification information from
one of Chotani's client files.  The return reported that G.C.
earned wage income that in fact she had not earned, from an

employer for whom she had never worked.  On this basis, Chotani fraudulently claimed a tax refund in G.C.'s name, in the amount of $2,603.  On or about January 24, 2003, per the instructions on the return, this refund was direct-deposited by the IRS to a bank account held jointly in defendant Chotani's and his parents' names.

In total, in or about 2002 and 2003, defendant Chotani, Amin, Ali, and their co-conspirators caused to be filed at least 250 fraudulent income tax returns with the Internal Revenue Service, claiming in aggregate between $1,000,000 and $2,500,000 in income tax refunds from the United States Treasury.  However, defendant and the USAO agree that not all of the co-conspirators' conduct was reasonably foreseeable to defendant Chotani. Defendant acknowledges, and defendant and the USAO stipulate, that defendant Chotani foresaw the filing of at least the forty-seven (47) fraudulent income tax returns identified in the indictment, which, collectively, falsely claimed $380,573 in income tax refunds from the United States Treasury.  Defendant thus acknowledges that the tax loss he intended to cause was approximately $380,573.

<u>SENTENCING FACTORS</u>

13.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a

1  sentence within the calculated Sentencing Guidelines range, and

2  that after considering the Sentencing Guidelines and the other §

3  3553(a) factors, the Court may be free to exercise its discretion

4  to impose any sentence it finds appropriate up to the maximum set

5  by statute for the crime of conviction.

6       14.   Defendant and the USAO agree to the following

7  applicable Sentencing Guidelines factors:

8       Base Offense Level  :   18   U.S.S.G. §§ 2T1.9; 2T1.1;
                                      2T4.1(G), based on tax loss of
9                                     at least $200,000

10      Adjustment              + 2  U.S.S.G. § 3B1.3 (abuse of
                                      position of trust, namely,
11                                    defendant's position as a tax
                                      return preparer)
12
        Acceptance of
13      Responsibility    :    -3   U.S.S.G. § 3E1.1

14      _____

15      Total Offense Level :    17

16
    The USAO will agree to a two-level downward adjustment for
17
    acceptance of responsibility (and, if applicable, move for an
18
    additional one-level downward adjustment under U.S.S.G.
19
    § 3E1.1(b)) only if the conditions set forth in paragraph 5(d)
20
    are met.
21
         15.   The parties agree that an appropriate sentence for
22
    defendant is one including a sentence of imprisonment at the low
23
    end of the range determined by the above-stated total offense
24
    level and the criminal history category determined by the Court.
25
    Subject to paragraph 30 below, defendant and the USAO agree not
26
    to seek, argue, or suggest in any way, either orally or in
27
    writing, that any other specific offense characteristics,
28

1    adjustments, departures, or variances in sentence pursuant to the

2    Sentencing Guidelines and/or the factors set forth in 18 U.S.C.

3    § 3553(a) be imposed.

4         16.  Accordingly, in consideration of all the factors under

5    18 U.S.C. § 3553(a), as well as the applicable Sentencing

6    Guidelines range, defendant and the USAO agree and stipulate

7    pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that

8    the appropriate sentence of imprisonment in this case is that

9    defendant be ordered to serve a sentence of imprisonment of

10   duration equal to the low end of the applicable Guidelines range

11   determined by a total offense level of 17 and defendant's

12   calculated criminal history level (_i.e._, a sentence of 24 months'

13   imprisonment if defendant is deemed to be in Criminal History

14   Category I).

15        17.  Defendant understands that the Court will determine the

16   facts and calculations relevant to sentencing and decide whether

17   to be bound by this agreement.

18        18.  Defendant understands and agrees that this agreement is

19   entered into pursuant to Federal Rule of Criminal Procedure

20   11(c)(1)(C).  So long as defendant does not breach the agreement,

21   defendant may withdraw from this agreement and render it null and

22   void if the Court declines to be bound by this agreement.  The

23   USAO may, in its discretion, withdraw from this agreement and

24   render it null and void if the defendant breaches this agreement

25   or the Court declines to be bound by this agreement.

26        19.  Defendant understands that there is no agreement as to

27   defendant's criminal history or criminal history category.

28

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a)  The right to persist in a plea of not guilty.

b)  The right to a speedy and public trial by jury.

c)  The right to be represented by counsel – and if necessary have the Court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d)  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e)  The right to confront and cross-examine witnesses against defendant.

f)  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g)  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h)  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving

1   up any right to appeal defendant's conviction on the offense to

2   which defendant is pleading guilty.

3                  LIMITED WAIVER OF APPEAL AND COLLATERAL ATTACK

4        22.  Defendant gives up the right to appeal all of the

5   following: (a) the procedures and calculations used to determine

6   and impose any portion of the sentence, provided they are

7   consistent with the provisions set forth in paragraphs 14 through

8   18, above; (b) the term of imprisonment imposed by the Court,

9   provided that the sentence is that agreed to in paragraphs 15 and

10  16, above; (c) the fine imposed by the Court, provided it is

11  within the statutory maximum; (d) the amount and terms of any

12  restitution order; (e) the term of probation or supervised

13  release imposed by the Court, provided it is within the statutory

14  maximum; and (f) any of the following conditions of probation or

15  supervised release imposed by the Court: the standard conditions

16  set forth in General Orders 318, 01-05, and/or 05-02 of this

17  Court; the drug testing conditions mandated by 18 U.S.C. §§

18  3563(a)(5) and 3583(d); the alcohol and drug use conditions

19  authorized by 18 U.S.C. § 3563(b)(7); and any conditions of

20  probation or supervised release agreed to by defendant in

21  paragraph 3 above.

22       23.  Defendant also gives up any right to bring a post-

23  conviction collateral attack on the convictions or sentence,

24  except a post-conviction collateral attack based on a claim of

25  ineffective assistance of counsel, a claim of newly discovered

26  evidence, or an explicitly retroactive change in the applicable

27  Sentencing Guidelines, sentencing statutes, or statutes of

28  conviction.

24.  The USAO gives up its right to appeal any sentence imposed by the Court, including any order of restitution, provided that the sentence conforms with paragraphs 15 and 16, above.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

25.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an attorney for the government.

### BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an attorney

for the government, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

(a) If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

(b) The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss pursuant to this agreement.

28. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such hearing occurred prior to the breach); (ii) the agreed-to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

29.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

1  chooses to impose are not error, although each party agrees to
2  maintain its view that the calculations in paragraph 14 are
3  consistent with the facts of this case.  While this paragraph
4  permits both the USAO and defendant to submit full and complete
5  factual information to the United States Probation Office and the
6  Court, even if that factual information may be viewed as
7  inconsistent with the facts agreed to in this agreement, this
8  paragraph does not affect defendant's and the USAO's obligations
9  not to contest the facts agreed to in this agreement.

10                    <u>NO ADDITIONAL AGREEMENTS</u>

11      31.  Defendant understands that, except as set forth herein,
12  there are no promises, understandings, or agreements between the
13  USAO and defendant or defendant's attorney, and that no
14  additional promise, understanding, or agreement may be entered
15  into unless in a writing signed by all parties or on the record
16  in court.

17        <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

18      32.  The parties agree that this agreement will be
19  considered part of the record of defendant's guilty plea hearing
20  as if the entire agreement had been read into the record of the
21  proceeding.
22  //
23  //
24  //
25  //
26  //
27  //
28

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANDRÉ BIROTTE JR.
United States Attorney

_____          1/11/13
CHARLES E. PELL                        Date
Assistant United States Attorney
Santa Ana Branch Office

JOSEPH A. RILLOTTA
Trial Attorney
U.S. Dept. of Justice, Tax Division


_____          _____
MASOOD CHOTANI                         Date
Defendant


_____          _____
HUMBERTO DIAZ                          Date
Attorney for Defendant
MASOOD CHOTANI

1

2   AGREED AND ACCEPTED

3
    UNITED STATES ATTORNEY'S OFFICE
4   FOR THE CENTRAL DISTRICT OF CALIFORNIA

5   ANDRÉ BIROTTE JR.
    United States Attorney
6

7   _____        _____
8   CHARLES E. PELL                         Date
    Assistant United States Attorney
9   Santa Ana Branch Office

10  JOSEPH A. RILLOTTA
    Trial Attorney
11  U.S. Dept. of Justice, Tax Division

12

13  _____        __1_/_10_/_2_0_1_3___
14  MASOOD CHOTANI                          Date
    Defendant
15

16
    _____        _____
17  HUMBERTO DIAZ                           Date
    Attorney for Defendant
18  MASOOD CHOTANI

19

20

21

22

23

24

25

26

27

28

                            21

1

2  AGREED AND ACCEPTED

3

   UNITED STATES ATTORNEY'S OFFICE
4  FOR THE CENTRAL DISTRICT OF CALIFORNIA

5  ANDRÉ BIROTTE JR.
   United States Attorney

6

7

8  CHARLES E. PELL                            Date
   Assistant United States Attorney
9  Santa Ana Branch Office

10 JOSEPH A. RILLOTTA
   Trial Attorney
11 U.S. Dept. of Justice, Tax Division

12

13

14 MASOOD CHOTANI                             Date
   Defendant

15

16                                           0/10/13

17 HUMBERTO DIAZ                              Date
   Attorney for Defendant
18 MASOOD CHOTANI

19

20

21

22

23

24

25

26

27

28

                            21

<u>CERTIFICATION OF DEFENDANT</u>

1
2      I have read this agreement in its entirety.  I have had
3  enough time to review and consider this agreement, and I have
4  carefully and thoroughly discussed every part of it with my
5  attorney.  I understand the terms of this agreement, and I
6  voluntarily agree to those terms.  I have discussed the evidence
7  with my attorney, and my attorney has advised me of my rights, of
8  possible pretrial motions that might be filed, of possible
9  defenses that might be asserted either prior to or at trial, of
10 the sentencing factors set forth in 18 U.S.C. § 3553(a), of
11 relevant Sentencing Guidelines provisions, and of the
12 consequences of entering into this agreement.  No promises,
13 inducements, or representations of any kind have been made to me
14 other than those contained in this agreement.  No one has
15 threatened or forced me in any way to enter into this agreement.
16 I am satisfied with the representation of my attorney in this
17 matter, and I am pleading guilty because I am guilty of the
18 charges and wish to take advantage of the promises set forth in
19 this agreement, and not for any other reason.

20
21
22  _____          1/10/2013
    MASOOD CHOTANI                       Date
23  Defendant
24
25
26
27
28

22

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MASOOD CHOTANI's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.


_____                    _____
HUMBERTO DIAZ                                 Date  0'/10/13
Attorney for Defendant
MASOOD CHOTANI

23